# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

THE RITA R. WADEL REVOCABLE LIVING TRUST,

and

229 JEBAVY ROAD, LLC (d/b/a/ Ludington Industries Building)

        Plaintiffs,

vs.

U.S. FISH AND WILDLIFE SERVICE,

and

GENERAL SERVICES ADMINISTRATION

        Defendants.

Case No.

Hon.

John V. Byl (P35701)
Scott M. Watson (P70185)
Juliette E. Collins (P86544)
Warner Norcross + Judd LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503
(616) 752-2000
*Attorneys for Plaintiffs*

## COMPLAINT
_____

Plaintiff the Rita R. Wadel Revocable Living Trust and Plaintiff 229 Jebavy Road, LLC (d/b/a Ludington Industries Building) (jointly, "**Plaintiffs**"), by and through their counsel Warner Norcross + Judd LLP, for their Complaint against Defendant U.S. Fish and Wildlife Service

("**FWS**") and Defendant General Services Administration ("**GSA**") (jointly, "**Defendants**"), state as follows:

## INTRODUCTION

1. This is a civil action for declaratory and injunctive relief, and costs and fees, under the citizen suit provision of the Resource Conservation and Recovery Act ("**RCRA**"), 42 U.S.C. § 6901, *et seq.*, specifically Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), to require Defendants to take all actions necessary to address the contamination at Plaintiffs' property (the "**Facility**") stemming from Defendants' handling, storage, transportation, and disposal of solid and hazardous waste which presents or may present an imminent and substantial endangerment to health and the environment, and to restrain Defendants from further violating RCRA.

2. The Facility is a property located at 229 S Jebavy, Ludington, MI 49431. Beginning in 1957 and continuing through 2017, FWS leased the Facility though GSA, using it as a biological station to combat the infiltration of sea lamprey in the Great Lakes System.

3. During FWS's 60-year tenancy at the Facility through GSA, FWS handled, stored, transported, and disposed of large quantities of a chemical pesticide ("**Lampricide**"), which contains 3-trifluoromethyl-4-nitrophenol ("**TFM**").

4. TFM is toxic to some fish, wildlife, and humans.

5. FWS's leasing and occupancy of the Facility, through GSA, caused the building, soil, and groundwater at and migrating from the Facility to be contaminated with TFM.

6. To protect its staff from the TFM contamination, in January 2017, FWS evacuated all personnel from the Facility and ceased using it for office functions, instead using the Facility only to store TFM. By December of 2018, FWS had ceased all uses of the Facility.

7. The TFM contamination at the Facility has rendered it uninhabitable and unusable for any commercial purpose.

8. In the months following Defendants' abandonment of the Facility, the parties engaged in a series of meetings to discuss the TFM contamination, but to date neither GSA nor FWS has done anything to remediate the harm for which they are responsible, leaving Plaintiffs and the community exposed to an ongoing, unabated imminent and substantial endangerment to health and the environment.

9. To redress this harm, Plaintiffs seek declaratory relief and injunctive relief pursuant to Section 7002(a)(1)(B) of RCRA to require Defendants to take all actions necessary to abate the imminent and substantial endangerment caused by Defendants' handling, storage, transportation, and disposal of TFM at the Facility, including demolishing and reconstructing the onsite building and parking lot and remediating contaminated soils, and to restrain Defendants from further violating RCRA.

## PARTIES, JURISDICTION, AND VENUE

10. Plaintiff Rita R. Wadel Revocable Living Trust is a trust created under Michigan law.

11. Plaintiff 229 Jebavy Road, LLC (d/b/a Ludington Industries Building) is a Michigan limited liability company.

12. Defendant GSA is an agency of the United States government that is responsible for the management and support of basic functioning of the other federal agencies.

13. Defendant FWS is an agency within the United States Department of the Interior that is responsible for the management of fish, wildlife, and natural habitats.

14. This Court has jurisdiction over the claims set forth in this complaint under Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), and 28 U.S.C. § 1331 (federal question).

15. Venue is proper in this Court pursuant to section 7002(a) of RCRA, 42 U.S.C. § 6972(a), because the Facility is located in Ludington, Michigan, and thus, the U.S. District Court for the Western District of Michigan the is the "district in which … the alleged endangerment may occur."

16. Plaintiffs have complied with the notice requirements of RCRA's citizen suit provision. On April 20, 2023, Plaintiffs gave notice of the endangerment as required by Section 7002(b)(2)(A) of RCRA, 42 U.S.C. § 6972(b)(2)(A), to the Administrator of the U.S. Environmental Protection Agency ("**EPA**"), to the Administrator of the Michigan Department of Environment, Great Lakes and Energy ("**EGLE**"), and to Defendants. Pursuant to 40 C.F.R. § 254.2, Plaintiffs also sent this notice to the Regional Administer of the U.S. EPA Region 5 and the U.S. Attorney General. The notice is attached hereto as **EXHIBIT 1**.

17. In accordance with section 7002(b)(2)(A) of RCRA, 42 U.S.C. § 6972(b)(2)(A), more than 90 days have passed since notice was served on the EPA, EGLE, and Defendants. EPA has not taken any of the actions described in Section 7002(b)(2)(B)(i) to (iv) of RCRA, 42 U.S.C. § 6972(b)(2)(B)(i) to (iv). EGLE has not taken any of the actions described in section 7002(b)(2)(C)(i) to (iii) of RCRA, 42 U.S.C.A. § 6972(b)(2)(c)(i) to (iii).

## FACTUAL BACKGROUND

**Defendants leased the Facility from Plaintiffs and operated it as a biological station for decades.**

18. The Facility comprises a combination of offices, specially designed chemical-storage space, and a sophisticated workshop and laboratory.

19. Pursuant to a series of leases between GSA and Plaintiffs/their predecessors in interest, FWS solely and exclusively occupied the Facility from 1957 until it abandoned the property in 2018.

20. Upon information and belief, throughout the duration of its occupancy, FWS has always operated the Premises as a "biological station" to combat the infiltration of the sea lamprey in the Great Lakes System.

21. On or about November 19, 2007, GSA and the Rita R. Wadel Revocable Living Trust and the Wadel Family Trust entered into the most recent lease for the Facility. The interest of the Wadel Family Trust was transferred to 229 Jebavy Road, LLC on November 9, 2018.

**The Facility became contaminated as a result FWS's storage and use of TFM.**

22. Over its 60-year tenancy through GSA, the FWS stored and handled at the Facility large quantities of Lampricide designed for application at breeding headwaters to kill sea lamprey larvae.

23. The active ingredient of Lampricide is TFM, which, in high doses, is toxic to humans. Human exposure to TFM without the proper protective gear may result in adverse health effects ranging from irritation to the skin to potential birth defects and central nervous system depression.

24. On August 16, 2022, Aaron Woldt, the Assistant Regional Director of Fisheries in the Midwest testified in a deposition that TFM "is meant to be applied in the field outdoors in well-ventilated areas where folks are wearing personal protective equipment."

25. TFM is not only toxic but also corrosive. During the period of FWS's occupancy of the Facility, the containers used for storing Lampricide corroded, resulting in significant releases of TFM into the floor, walls, and ground at the Facility.

26. An environmental study commissioned by the FWS in 2017 found TFM in every concrete core sample taken in the storage and handling areas of the Facility along with some portions of the office area.

27. TFM has contaminated the soil and groundwater underneath the building, and is also present in soil beneath the parking lot.

28. Even today, a wet paper towel placed on the floor of the Facility will turn bright yellow as it absorbs TFM out of the concrete.

29. FWS was so concerned about the health implications of the TFM contamination that in January 2017, FWS evacuated all staff from the Facility and ceased using it for office functions.

30. FWS continued to use the Facility to store TFM through December 2018, at which point it completely abandoned the Facility.

31. FWS now operates from a newly built, non-contaminated location in Ludington, less than a mile away from the Facility.

**Defendants have admitted that they are responsible for the TFM contamination, but have failed to remediate the harm.**

32. FWS is the only tenant that has occupied the Facility since it began leasing the property in 1957.

33. No party other than the FWS has handled, stored, treated, transported, or disposed of TFM at the Facility.

34. FWS has admitted its sole responsibility for the TFM contamination at the Facility and has acknowledged that it ought to undertake remediation efforts.

35. On August 16, 2022, Charles Wooley, the then-acting Regional Director of FWS, offered deposition testimony regarding FWS's role in the contamination at the Facility, stating:

6

I felt very strongly that we were responsible for the chemical contamination at the site.  Nobody in the country uses TFM except us.  It was us.  It's our fault.  Our problem. . . and to this day I still feel very strongly that we need to be responsible to clean up the site. . . get it back to a point where it was when we first occupied the building and make amends for the injury that we had – that we were responsible for at that site.

36. Similarly, Mr. Woldt testified that FWS "knew we needed to do something to remediate or remove that TFM" at the Facility.

37. Despite Defendants' knowledge of the TFM contamination, admitted culpability for the TFM contamination, and recognition of the danger that TFM poses, Defendants have yet to take any steps towards fixing the hazardous conditions at the Facility.

38. Instead, in the five years since they have abandoned the Facility and operated out of a new, uncontaminated facility, Defendants have allowed the TFM-riddled building and surrounding property to languish to the detriment of Plaintiffs, the surrounding community, and the broader environment.

39. As a result of the TFM contamination, the Facility is uninhabitable and unusable for any commercial purpose to this day.

40. TFM continues to emanate from the onsite building, and the contamination at and migrating from the Facility presents an imminent and substantial endangerment to health and the environment.

41. Abatement of the imminent and substantial endangerment caused by the TFM contamination requires demolition of the existing building and parking lot, remediation of soil underneath the building and parking lot, and reconstruction of a non-contaminated building.

**COUNT I: RCRA IMMINENT AND SUBSTANTIAL ENDANGERMENT**

42. Plaintiffs reallege and incorporate by reference paragraphs 1 through 41.

43. The objectives of RCRA are "to promote the protection of health and the environment and to conserve valuable material and energy resources." 42 U.S.C. § 6902(a).

44. Plaintiffs bring this claim under RCRA's citizen enforcement provision. Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), authorizes any person to bring suit "against any person, including the United States and any other governmental instrumentality or agency … who has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."

45. The term "solid waste" means "any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities." 42 U.S.C. § 6903(27).

46. "Hazardous waste" means "a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may— (A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed." 42 U.S.C. § 6903(5).

47. The term "disposal" means "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3).

48. When used in connection with hazardous waste, the term "storage" means "the containment of hazardous waste, either on a temporary basis or for a period of years, in such a manner as not to constitute disposal of such hazardous waste." 42 U.S.C. § 6903(33).

49. TFM is a solid waste and a hazardous waste.

50. For sixty years, Defendants handled, stored, transported, and disposed of TFM at the Facility.

51. Defendants' handling, storage, transportation, and disposal of TFM during FWS's leasing and occupancy of the Facility, through GSA, presents or may present an imminent and substantial endangerment to health and the environment.

52. Plaintiffs are entitled to relief under RCRA § 7002(a), 42 U.S.C. § 6972(a), requiring Defendants to take such action as may be necessary to abate the imminent and substantial endangerment to public health and the environment stemming from Defendants' handling, storage, transportation, and disposal of TFM, and restraining Defendants from further violating RCRA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A. A declaration that Defendants have contributed "to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment" within the meaning of Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B);

B. An injunction requiring Defendants to take all such actions as may be necessary to eliminate such endangerment, including demolition of the existing building and parking lot, remediation of soil underneath the building and parking lot, and reconstruction of a non-contaminated building.

    C.    An injunction restraining Defendants from further violating RCRA.

    D.    An award of Plaintiffs' costs of litigation (including reasonable attorney and expert witness fees) incurred in bringing this action, as provided by 42 U.S.C. § 6972(e).

    E.    Such other relief as the Court may deem just and proper.

Dated:  August 2, 2023

                                                                       */s/Scott M. Watson*
John V. Byl (P35701)
Scott M. Watson (P70185)
Juliette E. Collins (P86544)
Warner Norcross + Judd LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503
(616) 752-2000
*Attorneys for Plaintiffs*